**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**COREY ESTES,**

       **Petitioner,**

**v.**                                                     **Civil Action No. 5:10cv111**
                                                         **Criminal Action No. 5:05cr13**

**UNITED STATES OF AMERICA,**         **(Judge Stamp)**

       **Respondent.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On November 1, 2010, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody.[1] The Government was ordered to answer on November 3, 2010[2] but on November 4, 2010, filed a motion for an extension of time instead.[3] The motion was granted by Order entered on November 8, 2010;[4] the Government then filed its response on December 27, 2010.[5] On January 19, 2011, petitioner moved for an extension of time to file his reply,[6] which was granted by Order entered on January 24, 2011.[7] On February 14, 2011, petitioner filed his reply,[8] along with a motion for a second extension of time in

---

[1] Dkt.# 336.

[2] Dkt.# 340.

[3] Dkt.# 341.

[4] Dkt.# 342.

[5] Dkt.# 347.

[6] Dkt.# 350.

[7] Dkt.# 355.

[8] Dkt.# 357.

which to further reply.[9] His motion was granted by Order entered on February 22, 2011,[10] and on March 4, 2011, petitioner filed his second reply.[11]

## II. FACTS

### A. Conviction and Sentence

On August 18, 2005, petitioner signed a plea agreement by which he agreed to plead guilty to Count 1, conspiracy to distribute more than 50 grams of cocaine base and 5 kilograms of cocaine, in violation of Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Dkt.# 143 at 1). The plea agreement contained a stipulation that petitioner's total drug relevant conduct was more than 1.5 kilograms of cocaine base. (Id. at 4). Petitioner also waived his right to appeal and to collaterally attack his sentence. Specifically, the Petitioner's plea agreement contained the following language regarding his waiver:

> 11. Mr. Estes is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant waives the right to appeal any sentence within the maximum provided in the statute of conviction (or in the manner in which that sentence was determined) including any enhancements under Section 4B1.1 of the Guidelines, on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255. If the Court departs upward or downward from the guideline range, the party opposing the departure has the right to appeal the departure. However, neither party has the right to appeal he Court's denial of either an upward or downward departure. Otherwise than stated herein, in exchange for defendant's waiver, the United States waives its right to appeal. The parties have the right during any appeal to argue in support of the sentence.

---

[9]Dkt.# 359.

[10]Dkt.# 361.

[11]Dkt.# 363.

2

On August 22, 2005, the petitioner entered his plea in open court. Petitioner was 31 years old and had obtained his GED. (Dkt.# 233 at 6). He testified that the only work experience he had ever had was a job at McDonald's at age 16. (Id.). He denied having any medicine, drugs or alcoholic beverage within the previous 24 hours, and denied ever having been treated for mental illness or drug addiction. (Id.). He denied having any hearing impairment or other disability that would interfere with his full participation in the hearing. (Id. at 6 - 7). The Court asked petitioner if he understood that, pursuant to the plea agreement, he had entered into a Blakely[12] and Booker [13] waiver, permitting the Court to make factual determinations for sentencing, including any enhancements and relevant conduct determinations, and petitioner said that he did. (Id. at 14-15). The Court specifically asked petitioner if he understood the waiver of his appellate and post-conviction relief rights and Petitioner indicated that he did. (Id. at 15 and 19). However, the court advised petitioner he waived his right to seek post conviction relief except for claims of ineffective assistance of counsel, sentence above a statutory maximum, and sentence for an unconstitutionally impermissible purpose. (Id. at 15 and 19). The Court asked petitioner's counsel if he believed petitioner understood the waiver of appellate and post-conviction relief rights and counsel said "I do, your Honor." (Id.).

During the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud in open court each paragraph of the plea agreement, including the paragraph 11 *supra*. (Id. at 7 - 12). The petitioner stated he understood and agreed with all the terms and conditions of the plea agreement, and had read and gone over it with counsel before signing it. (Id. at 13). The Court then reviewed

---

[12]Blakely v. Washington, 542 U.S. 296 (2004).

[13]U.S. v. Booker, 543 U.S. 220 (2005).

all the rights petitioner was giving up by pleading guilty. (Id. at 20 - 22). During the plea hearing, the government presented the testimony of Special Agent Mark Simala with the United States Drug Enforcement Administration, assigned to the Hancock-Brook-Weirton Drug Task Force, to establish a factual basis for the plea. (Id. at 23 - 30). The Petitioner did not contest the factual basis of the plea.

After the Government presented the factual basis of the plea, the Petitioner advised the Court that he was guilty of Count 1 of the indictment. (Id. at 31). The Petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id.). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id.). The Petitioner testified that his attorneys had adequately represented him, and that they had left nothing undone. (Id. at 31 - 32). Finally, Petitioner said he was in fact guilty of the crime to which he was pleading guilty. (Id. at 32).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that petitioner understood the consequences of pleading guilty, and that the elements of the crime were established beyond a reasonable doubt. (Id.). Petitioner did not object to the Court's finding.

On November 15, 2005, petitioner appeared before the Court for sentencing. After learning from counsel that they had not yet had the opportunity to go over the PreSentence Investigation Report ("PSR") with petitioner, the hearing was continued. (Dkt.# 233 at 36).

Sentencing reconvened on December 12, 2005. After extensive discussion on counsel's objection as to whether one of petitioner's prior convictions constituted a predicate offense for purposes of his classification as a career offender, sentencing was again continued to permit further

investigation into the matter.  (Id. at 19).

Sentencing was again re-convened on December 15, 2005.  After determining that there was insufficient evidence determine whether in fact the prior conviction at issue was a felony, the Court sustained counsel's objection.  Accordingly, after considering several factors, including the circumstances of the crime, petitioner's extensive criminal history, and the sentencing objectives of punishment, the Court sentenced the petitioner to a term of two hundred sixty-two months incarceration to be followed by five years supervised release.[14]

### B.     **First Federal Habeas Corpus**

The petitioner filed his first Motion to Vacate Under 28 U.S.C. § 2255 on December 29, 2006,[15] asserting four grounds for relief based upon ineffective assistance of counsel.  This Court granted petitioner's motion only as to the issue of ineffective assistance of counsel for failure to file an appeal,[16] vacated his judgment and reentered it, to reinstate his appellate rights.

### C.     **Appeal**

Petitioner filed a notice of appeal on June 29, 2009.[17]  Petitioner filed a brief pursuant to Anders v. California,[18] questioning whether the District Court correctly complied with Rule 11 in accepting his guilty plea.[19]  On May 20, 2010, in an unpublished *per curiam* opinion, the Fourth

---

[14] Dkt. No. 193.

[15] Dkt. No. 227.

[16] Dkt.# 302.

[17] Dkt.# 313.

[18] Anders v. California, 386 U.S. 738 (1967).

[19] Although petitioner filed two motions for extension of time in which to file a *pro se* appellate brief, he never filed in fact filed one.

Circuit held that the District Court had fully complied with Rule 11 in accepting petitioner's plea, dismissing the appeal to the extent that it related to petitioner's sentence and affirming his conviction, noting that there were no meritorious issues for appeal.[20] Mandate issued on June 11, 2010.[21] Petitioner did not file a petition for writ of *certiorari.*

### D. Other Collateral Proceedings

On July 13, 2009, petitioner, through appointed counsel, filed a Motion for Reduced Sentence Pursuant to 18 U.S.C. 3582(c). (Dkt.# 318). On July 17, 2009, the Court granted the petitioner's motion, reducing his sentence from 262 months to 210 months.[22]

### E. Second Federal Habeas Corpus

**Petitioner's contentions Dkt.# 336**

Petitioner filed his second §2255 motion on November 1, 2010, moving to vacate his sentence under the "Savings Clause of §2255(e)" [sic] and challenging the legality of his detention.[23] The petitioner alleges that:

1) he is "actually and factually" innocent of the drug quantities he stipulated to in his plea agreement because there is an "existence of the phantom of the evidence;"

2) he is entitled to sentencing relief pursuant to the passage of the Fair Sentencing Act of 2010, with its modification of the amount of cocaine base necessary to trigger mandatory minimum sentences; and

3) counsel was ineffective during the plea agreement negotiations for:

    a) misadvising petitioner to stipulate to drug amounts that the Government could not

---

[20] Dkt.# 330.

[21] Dkt.# 332.

[22] Dkt.# 319.

[23] Dkt.# 336.

prove; and

b) not advising petitioner of his Blakely or Booker rights.

As relief, he requests that the Court "Administer Habeas Review under §2241, §2243, and §2255(e); 2) Enter an Order directing the U.S. Attorney to Show Cause within 30 days of receipt of this Petition; 3) Enter an Order directing the Clerk to forward a copy of the Petition and the Order to Show Cause; 4) Issue a Writ of Habeas Corpus Subjiciendum, and Testificandum to have the petitioner produced for a hearing if the Court deems necessary; and 5) Summarily hear and determine the facts, and resentence Petitioner under the 18 to 1 ratio with a guidelines range of 84 to 105 months, or in the alternative, under the statutory mandatory minimum of 5 years and applying the factors enumerated under 18 U.S.C. § 3553(a)."

**The Government's Response (Dkt.# 347)**

The government contends that the petitioner's knowing and willful waiver of the right to file a collateral attack in his plea agreement bars his bringing his §2255 motion before the Court.

There was more than sufficient evidence to convict petitioner, and his claim of actual and factual innocence is essentially an attempt to relitigate the same claim raised in his first § 2255 motion, which was denied and dismissed by this Court.

Additionally, the government contends the Fair Sentencing Act is "specifically for prospective prosecutions and has not been made retroactive," giving "absolutely no relief to [the petitioner]."[24]

Petitioner's counsel was not ineffective.

---

[24] Id.

**Petitioner's Replies (Dkt.#s 357 and 363)**[25]

Petitioner reiterates the claims previously made in his original petition.

**F.    Recommendation**

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be denied and dismissed from the docket because the petitioner knowingly and willfully waived his right to collaterally attack his sentence and neither of his excepted claims of ineffective assistance of counsel has any merit.

### III.  ANALYSIS

**A.    Petitioner's Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. §2255. A motion collaterally attacking a petitioner's sentence brought pursuant to §2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va. Jan. 4, 2006).

**B.    Waiver of Right to File § 2255 Collateral Attack**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977).  However, the advantages of plea bargains "can be

---

[25] Although, concomitant with the filing of his first reply, petitioner moved for a second extension of time in which to file an additional reply, on the grounds that he had not been able to freely access the law library to complete his research, the second reply (Dkt.# 363) he ultimately filed is merely an exact duplicate of his first. (Dkt.# 357).

8

secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such

9

an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that the defendant made a knowing and voluntary waiver of rights.

Similarly here, the district court conducted a Rule 11 colloquy and the petitioner specifically testified that he understood that, incident to his plea agreement, he was waiving his right to appeal his sentence or to collaterally attack it, if it was within the statutory maximum. (Dkt.# 233 at 17 - 18). The statutes of conviction, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), conspiracy to distribute more than fifty (50) grams of cocaine base and five (5) kilograms of cocaine, have a penalty of a minimum period of incarceration of not less than ten years nor more than life imprisonment. The sentence he received was 262 months or 21.83 years imprisonment.[26] The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily waived the right to collaterally attack the guilty plea and to file this § 2255 motion.

Nonetheless, during this Court's usual colloquy regarding the waiver of post conviction relief, the Court explicitly excepted certain claims from the waiver. Specifically, the colloquy contained the following waiver:

> THE COURT: And do you understand that under paragraph 11 of the plea
> agreement, that you have waived the right to appeal the sentence for any of the

---

[26]Pursuant to petitioner's later-filed motion pursuant to 18 U.S.C. 3582 for retroactive application of sentencing guidelines to crack cocaine offense, his sentence was reduced to 210 months. (Dkt.# 319).

10

reasons under the stentencing statute and also waived the right to seek any postconviction relief, including that under the so-called habeas corpus statute, subject to certain exceptions, such as ineffective assistance of counsel, sentence above a statutory maximum, and sentence for an unconstitutionally impermissible purpose? . . . Do you understand that waiver?

THE DEFENDANT: Yes, sir, your Honor.
. . .

THE COURT: And, again, do you understand that under the waiver that is contained in paragraph 11 of the plea agreement, you have entered into a certain waiver of appellate and postconviction relief rights, subject to the exceptions I went over with you, do you understand that?

THE DEFENDANT: Yes, sir, your Honor."

(Dkt.# 233 at 15 and 19).

Therefore, the only post conviction claims that the petitioner did not waive, and which would be cognizable in a Motion Under 28 U.S.C. §2255, are claims of ineffective assistance of counsel, sentence above a statutory maximum, and sentence for an unconstitutionally impermissible purpose. Petitioner's Ground One and Two claims are that he is "actually and factually" innocent of the drug quantities he stipulated to in his plea agreement because there is an "existence of the phantom of the evidence," and that he is entitled to relief pursuant to the passage of the Fair Sentencing Act of 2010's modification of the amount of cocaine base necessary to trigger mandatory minimum sentences. Petitioner's purported "actual and factual innocence" of drug amounts he stipulated to in his plea agreement (Dkt.# 143, ¶ 10 at 4) and his entitlement to relief pursuant to the Fair Sentencing Act of 2010[27] are not any of the three exceptions which the Court advised petitioner.

---

[27] Moreover, even if petitioner had not stipulated to the amount of his drug relevant conduct, the FSA has no application to his situation at this time. Petitioner was sentenced on December 19, 2005. The FSA was not signed into law until August 3, 2010. This Court only has jurisdiction to amend a sentence where a guideline has been implemented and made retroactive. U.S.S.G. Manual § 1B1.10 (2009); 18 U.S.C. § 3582(c)(2). The FSA has not been made retroactive at this time, therefore petitioner is not entitled to any reduction in his base offense level under it.

Therefore, petitioner has waived his right to bring those claims, and relief should be denied.

However, because petitioner did not validly waive his right to bring his ineffective assistance of counsel claims, they will be given full review.

**Ground Three (a): Whether Counsel was Ineffective During the Plea Agreement Negotiations for Misadvising Petitioner to Stipulate to Drug Amounts that the Government Could Not Prove.**

Petitioner claims counsel was ineffective because counsel gave erroneous advice to induce Petitioner to accept the stipulation as to drug amounts in the plea agreement. Petitioner avers that because there was no "hard evidence" to prove the drug amounts, his sentence was based on a "non-existence offense."

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. U.S., 397 U.S. 742, 748 (1970). "A voluntary and intelligent plea of guilty by an accused person who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508 (1984). "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields, 956 F.2d at 1299; see also Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity").

"[A] lawyer must take care not to coerce a client into either accepting or rejecting a plea offer." Jones v. Murray, 947 F.2d 1106, 1111 (4th Cir. 1991) ["[V]arious [ABA] Standards place[] upon counsel an affirmative duty to avoid exerting 'undue influence on the accused's decision' and to 'ensure that the decision . . . is ultimately made by the defendant.'" (quoting Standards for Criminal Justice 4-5.1(b) & 14-3.2(b))]." See also Purdy v. United States, 208 F.3d 41, 45 (2d

Cir.2000).

This Court finds, as did the Fourth Circuit Court of Appeals,[28] that petitioner knowingly and voluntarily entered into his plea agreement because petitioner was made fully aware of the consequences of his plea, and petitioner has set forth no evidence to suggest his plea was induced by counsel's misadvice. After a detailed description of the plea agreement during petitioner's plea hearing, the Court specifically addressed petitioner. (Dkt.# 233 at 13). Petitioner affirmatively responded, reported having received and reviewed the plea agreement with counsel; testified as to having understood all its terms and provisions; having had the opportunity to ask questions of counsel about the agreement; and having received satisfactory answers to any questions regarding it. (Id.). Further, Petitioner represented that he understood the consequences of pleading guilty, including forfeiting his constitutional right to trial by jury. (Id. at 20 - 22).

If Petitioner wanted to challenge the Government's version of the facts, he had the opportunity, but failed to take it, at the plea hearing. After the Government presented its witness, whose detailed testimony regarding numerous controlled buys made from petitioner supported the factual basis for the plea, petitioner did not dispute the testimony or object in any way. (Id. at 30). After formally pleading guilty, the Court asked Petitioner whether the guilty plea was "the result of any threat or coercion or harassment of you by anybody at any time." (Id. at 31). Petitioner denied that it was. (Id.). The Court then asked whether the plea was "the result of any promise or inducement other than those contained in the plea agreement." Again, Petitioner responded "no." (Id.). Finally, the Court found Petitioner "competent to enter a plea of guilty. . . . that the plea has

---

[28]On appeal, the Fourth Circuit held that the district court "properly informed Estes of the nature of the charges and penalties he faced and the rights he was forfeiting as a result of his plea. The court also found that Estes was competent and entered his plea knowingly and voluntarily and that there was a sufficient factual basis for the plea." (Dkt.# 330 at 3).

been freely and voluntarily made, that the defendant is aware of the plea and the elements have been established and a basis in fact for the plea has been established." (Id. at 32). The Court then accepted the guilty plea. Moreover, when questioned in detail about his satisfaction with counsel's performance up to that point, petitioner averred, under oath, that counsel had adequately and effectively represented him and had left nothing at all undone. (Id.). He further testified that he was in fact guilty of the crime charged and that neither he, nor counsel, had found any defense to the charge. (Id.).

Petitioner has not shown that his attorney made any error at all, let alone that counsel made an error so serious that he failed to function as his counsel under the Sixth Amendment. Petitioner has not met his burden; thus, the claim is without merit.

**Ground Three (b): Whether counsel was ineffective during the plea agreement negotiations for not advising petitioner of his Blakely or Booker rights.**

Petitioner alleges that during plea negotiations, counsel failed to advise him of his rights under Blakely and Booker.

This claim lacks support in the record. Petitioner's plea agreement states, *inter alia,* that: "[d]efendant does waive any rights he may have pursuant to the Blakely and Booker progeny of cases, and agrees that the Court will make factual determinations for sentencing, including any enhancements and relevant conduct for determining an advisory guideline range." (Dkt.# 143, ¶10 at 4). Further, during petitioner's Rule 11 colloquy, any alleged deficiency by counsel in advising petitioner of his rights under Blakely or Booker was corrected by the Court. As stated *supra,* a review of the plea hearing transcript reveals that the Court specifically inquired of petitioner whether he understood that, pursuant to his plea agreement, he had entered into a Blakely and Booker waiver, thereby permitting the Court, rather than a jury, to make factual determinations for

14

sentencing, including any enhancements and relevant conduct determinations for determining an advisory guideline range, and petitioner said that he did. (Id. at 14-15).

Petitioner has failed to prove the first prong of Strickland; counsel's performance in advising him of his Blakely and/or Booker rights was neither deficient nor did it fall below an objective standard of reasonableness. It goes without saying that petitioner was not prejudiced by this.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the petitioner's §2255 motion be **DENIED** and **dismissed with prejudice** from the docket.

Accordingly, petitioner's requests that the Court

"1) Administer Habeas Review under §2241, §2243, and §2255(e);

2) Enter an Order directing the U.S. Attorney to Show Cause within 30 days of receipt of this Petition;

3) Enter an Order directing the Clerk to forward a copy of the Petition and the Order to Show Cause;

4) Issue a Writ of Habeas Corpus Subjiciendum, and Testificandum to have the petitioner produced for a hearing if the Court deems necessary; and

5) Summarily hear and determine the facts, and resentence Petitioner under the 18 to 1 ratio with a guidelines range of 84 to 105 months, or in the alternative, under the statutory mandatory minimum of 5 years and applying the factors enumerated under 18 U.S.C. § 3553(a)"

should all be **DENIED as moot**.

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those

portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: August 19, 2011                /s/ *James E. Seibert*
                                      JAMES E. SEIBERT
                                      UNITED STATES MAGISTRATE JUDGE